# Cases

# FIRST DEPARTMENT,

AT

# GENERAL TERM.

## October, 1881.

---

In the Matter of the Estate of MILTON S. CURRY,
Deceased.

*Discovery of property wrongfully withheld from an executor — the provisions of the Code*
*of Civil Procedure relate to the possession only, and are constitutional.*

In the proceedings authorized by the Code of Civil Procedure (§§ 2706–2714)
for the discovery of property of a decedent, wrongfully withheld from his legal
representatives, the question of possession only and not that of title can be
examined, and the said sections are not in conflict with the provisions of the
Constitution declaring that no person shall be deprived of life, liberty or prop-
erty without due process of law, and that trial by jury in all cases in which it
has been heretofore used shall remain inviolate.

*Matter of Beebe* (20 Hun, 462) distinguished.

APPEAL by Horace H. Brockway from an order of the surrogate
of the county of New York, directing his appearance and examina-
tion for the discovery of property.

*F. B. Lord*, for Horace H. Brockway, appellant.

*J. D. Townsend*, for the administratrix, respondent.

DAVIS, P. J.:

This appeal is from an order of the surrogate in proceedings taken
under article 1, title 4 chapter 18, sections 2706, *et seq.*, of the Code
of Civil Procedure. On the 24th of January, 1881, Sarah L. Curry,
administratrix of Milton S. Curry, deceased, presented her petition
to the surrogate under section 2706 of the present Code, in which

she alleged that she believed that some of the chattels and personal property of the estate of Milton S. Curry, deceased (describing the same), which belonged to him at the time of his death, or were in his possession within two years prior to his decease, were withheld by one Horace H. Brockway, into whose hands or possession the same had fallen or been taken; that she had caused a demand of the articles and property to be made and said Brockway had refused to deliver the same to her, and she prayed, in substance, that an inquiry be had respecting the property and that Brockway be cited to attend the inquiry and be examined accordingly. The surrogate thereupon issued the citation prayed for, and upon the return the said Brockway appeared by counsel and objected to the jurisdiction of the court and to the constitutionality of the proceedings provided for by the Code of Civil Procedure under which such citation was issued. The surrogate overruled the objection and made a further order that the examination of the said Brockway be taken upon an adjourned day, and from this order the said Brockway appealed. The appellant relies upon the decision of the General Term of this court, held in and for the third department, *In the Matter of the Estate of Mary Ann Beebe* (20 Hun, 462). The proceedings in that case were taken under the provisions of chapter 394 of the Laws of 1870, and it was held that the act was unconstitutional and void. If the proceedings in this case arose under that act we should feel ourselves constrained to follow that decision without suggesting any doubt of its correctness. The provisions of the Code of Civil Procedure from sections 2706 to 2714, inclusive, are a re-enactment, with modifications, of the provisions contained in the act referred to. But as the note of Mr. Throop to section 2712 states, " care has been taken to confine the decree to a determination of the question of possession." An examination of the several sections shows that the question of possession is the sole object of the provisions. *In the Matter of Beebe (ubi supra)*, the court seem to have been of the opinion that the question of title might, under the act of 1870, be determined by the surrogate, and perhaps that view may be maintainable. But it seems clear that, under the provisions of the Code, the surrogate can only deal with the question of possession, and can only decree that the possession be delivered to the representative of the deceased party, where it clearly appears that such posses-

sion is wrongfully withheld. We are unable to see that these provisions are of necessity in conflict with the Constitution. They are analogous, in some respects, to the familiar proceedings taken formerly in actions of replevin, and now in actions of claim and delivery, by which the possession of property may be transferred and delivered without determining the question of title; and to some extent, also, with the relief given in proceedings supplementary to execution, where a third person is claimed to have property of a judgment debtor, and is summoned to appear and be examined upon the question of his possession, and, in proper cases, subjected to an order for the delivery of the property of the judgment debtor in his hands. Neither of these proceedings has ever been supposed to be obnoxious to any constitutional provision, and so long as they are limited to the question of possession, there does not seem to be any good reason for doubting their constitutionality. It certainly is extremely desirable that there should be some speedy mode by which the property of testators and intestates, of which possession has been obtained by third parties, can be promptly reached in the Surrogate's Court, and placed in the hands of an executor or administrator. It was by no means the intention of the statute to go further than to rescue the property clearly belonging to the estate of the decedent from a party not lawfully entitled to withhold it; and a system of procedure which sufficiently guards the rights of claimants of the property, as the Code seems to do, ought to be upheld unless clearly unconstitutional.

The provision of the Constitution which declares that no person shall be deprived of life, liberty or property without due process of law, has received very able consideration by the courts in several cases. (*Taylor* v. *Porter*, 4 Hill, 140; *Wynehamer* v. *People*, 13 N. Y., 461; *Rockwell* v. *Nearing*, 35 id., 302; *Westervelt* v. *Gregg*, 12 id., 212.) Under those cases, the phrase "due process of law" must be held to mean, lawful judicial proceedings in a court of competent jurisdiction. It is claimed that the provisions of the Code under consideration are unconstitutional, because they do not provide for trial by jury. The Constitution declares, in section 2 of article 1, that "trial by jury in all cases in which it has been heretofore used, shall remain inviolate forever, but a jury trial may be waived by the parties in all civil cases in the manner to be prescribed by

law." Trial by jury is not therefore, in all cases, an essential element in "due process of law." It is only in cases in which it had been theretofore used that the Constitution makes it a necessary element in such "due process," and hence it follows that cases within the jurisdiction of the equity courts, although they often involve the title and final disposition of property, are, nevertheless, "due process of law" within the meaning of the Constitution; hence, also, those proceedings affecting the possession of personal property in actions at law which existed prior to the adoption of the Constitution and the subsequent proceedings which have taken their place as, for instance, creditors bills and proceedings to reach property of judgment debtors in supplementary proceedings, are not supposed to be obnoxious to the Constitution, although no jury trial is provided. Undoubtedly courts of equity could have intervened to aid executors and administrators to discover and obtain possession of property belonging to a testator or intestate; and ever since Surrogates' Courts or courts of probate have been known in this or other States the power of the court to control the possession of property in the hands of an appointed representative of the estate, and in many cases to impound it for the benefit of the estate, has in some form been used. The legislature has unquestionably, we think, power to confer upon the surrogate any summary authority in respect of estates within its jurisdiction which courts of equity could have used before the adoption of the Constitution; and especially would this be so if the power simply related to the possession of the personal effects of a deceased party.

But we do not intend to discuss the question further than is necessary simply to state our reasons for affirming the order of the surrogate. The question is one of grave importance and will doubtless be finally determined upon full consideration by the Court of Appeals. We think, therefore, the better mode for its presentation to that tribunal will be reached by affirming the order, notwithstanding its apparent conflict with the case of the *Matter of Beebe* above cited.

The order should, therefore, be affirmed.

DANIELS, J., concurred.

Present — DAVIS, P. J., and DANIELS, J.

Order affirmed.